*DSB Holdings v. Harvard Steel Sales*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of October, two thousand twenty-one.

PRESENT:   Dennis Jacobs,
           Steven J. Menashi,
                 *Circuit Judges*
           John P. Cronan,
                 *District Judge.**

_____

DSB HOLDINGS, LLC,

    *Plaintiff-Appellant*,

GALVSTAR HOLDINGS, LLC,
    *Plaintiff*,

   v.                                          No. 20-3576

_____

* Judge John P. Cronan of the United States District Court for the Southern District of New York, sitting by designation.

HARVARD STEEL SALES, LLC,

        *Defendant-Appellee,*

JEREMY JACOBS,

        *Defendant*.

_____

| | |
|---|---|
| *For Plaintiff-Appellant*: | MATTHEW H. SHEPPE, Reiss Sheppe LLP, New York, New York |
| *For Defendants-Appellees*: | MICHAEL J. BARRIE, Benesch, Friedlander, Coplan & Aronoff, Wilmington, Delaware |

Appeal from a grant of summary judgment by the United States District Court for the Southern District of New York (Daniels, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the grant of summary judgment by the district court is **AFFIRMED**.

Plaintiff-Appellant DSB Holdings, LLC ("Galvstar") appeals from the judgment of the district court entered on September 23, 2020, granting summary judgment to Defendant-Appellee Harvard Steel Sales, LLC ("Harvard") on Galvstar's claim for breach of the covenant of good faith and fair dealing. *See*

*Galvstar Holdings, LLC v. Harvard Steel Sales, LLC*, No. 16-CV-7126, 2020 WL 5663392 (S.D.N.Y. Sept. 23, 2020). Galvstar argues that the district court erred by (1) drawing factual inferences against the non-moving party at the summary judgment stage, (2) failing to acknowledge certain disputed issues of material fact, and (3) failing to consider circumstantial evidence of Harvard's alleged intention to take over Galvstar's business.

When this case previously came before our court, we affirmed the dismissal under Rule 12(b)(6) of Galvstar's claims for breach of a joint venture agreement and breach of fiduciary duty, and we denied Galvstar's request for leave to amend its claim for breach of contract, which the district court had also dismissed. *Galvstar Holdings, LLC v. Harvard Steel Sales, LLC*, 722 F. App'x 12 (2d Cir. 2018). We vacated the dismissal of Galvstar's claim for breach of the covenant of good faith and fair dealing, however, because—taking the allegations in the complaint as true— Galvstar stated a plausible claim for relief. *Id*. at 16-17. The district court had determined that Harvard's nonpayment of obligations to Galvstar under a May 2013 term processing agreement ("May TPA") was "attributable to a dispute over the quality control of steel and a machine failure." *Id.* at 17. We noted that "such fact-finding outside of the allegations is not proper at the motion to dismiss stage"

3

but that "[t]he district court's conclusion may hold true at the summary judgment stage." *Id*. With the litigation now having progressed to the summary judgment stage, we hold that the district court properly granted summary judgment to the defendants on the claim for breach of the covenant of good faith and fair dealing. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"We review the district court's rulings on summary judgment *de novo*, resolving all ambiguities and drawing all permissible inferences in favor of the nonmoving party." *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 83 (2d Cir. 2020). However, the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" to defeat summary judgment. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

Galvstar claims that Harvard violated the covenant of good faith when it stopped ordering steel and declined to pay outstanding invoices in full after the May 2013 TPA was executed. Galvstar argues that Harvard's purported concerns about the quality of Galvstar's steel were pretextual and that Harvard decided not to order steel or to pay invoices in full in order to undermine Galvstar and eventually to take over Galvstar's business. We agree with the district court that

the record does not support a reasonable inference that Harvard acted as part of a scheme to take over its business. It is undisputed that the quality of Galvstar's steel was a legitimate concern. Indeed, Daniel Bain, Galvstar's president, at one point described the quality as "outrageous." App'x 425. Galvstar argues that the contractual arrangements already accounted for the uneven quality of the steel. But Galvstar's production issues prompted Harvard to reevaluate its expectations. In April 2013, Galvstar's plant shut down for several days because of a mechanical failure associated with the leveler. Harvard canceled "in excess of 4,000 tons" of processing orders as a result, according to a letter from Harvard's chief commercial officer. *Id*. at 630. "We had no guarantee that the leveler would work and the mill was getting ready to roll the tons so we had no choice but to cancel the orders." *Id.* Harvard also insisted on its right to reduce its payments to Galvstar to account for the low quality of the steel it received. Section 4.2 of the May TPA memorialized the parties' understanding that invoices "will be reduced to account for non-conforming material that may carry lesser value." *Id.* at 31. Harvard explained that it would not pay the outstanding invoices in full in order to account for the non-conforming steel it had received. *See, e.g., id*. at 542.

Against the evidence that Harvard acted because of concern about steel quality and the machine failure, Galvstar points to a meeting at which Timothy Pynchon, the portfolio manager for Pioneer Investments Management (Galvstar's primary lender), purportedly communicated to Harvard's president, Jeremy Jacobs, an interest in replacing the leadership of Galvstar. Galvstar also identifies emails in which Pynchon shared with Jacobs a draft proposal that suggested Harvard would assume operating control of Galvstar. The district court properly concluded that this evidence would not be sufficient for a reasonable jury to conclude that Harvard did not intend to honor the May TPA because it was engaged in a scheme to take over Galvstar. The allegedly suspicious meeting between Pynchon and Jacobs had been arranged by Galvstar following the breakdown of Galvstar's facility. Galvstar offers hearsay evidence of what was said at that meeting, but the evidence does not indicate a scheme involving nonperformance of the May TPA. Moreover, the record indicates that Pynchon sent identical draft proposals to both Daniel Bain, Galvstar's owner, and to Jacobs, *compare* App'x 687-92, *with id.* at 693.1-693.6, suggesting that it was not a secret from Galvstar. There is no evidence in the record that Jacobs and Pynchon ever spoke about the proposal, let alone coordinated their activities around such a

6

proposal, and both Jacobs and Pynchon disclaimed having discussed it. Galvstar's argument that this evidence creates a factual dispute over Harvard's intention relies on impermissibly speculative inferences and conclusory allegations.

Such inferences are untenable because the May TPA did not require Harvard to purchase any steel or to pay its invoices in full. "Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002). Accordingly, the covenant of good faith and fair dealing emphasizes "consistency with the justified expectations of the other party." *Bank of China v. Chan*, 937 F.2d 780, 789 (2d Cir. 1991) (quoting Restatement (Second) of Contracts, § 205 cmt. a (1981)). To violate the covenant, a party's actions "must directly violate an obligation that falls within [the parties'] reasonable expectations, that is to say, the implied promise must be so much a part of a contract as to be essential to effectuate the contract's purposes." *Id.* As we previously noted, "the implied covenant does not extend so far as to undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract." *Galvstar Holdings*, 722 F. App'x at 16 (quoting *M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134,

7

136 (2d Cir. 1990)). Indeed, New York courts have cautioned that, "[w]hile the covenant of good faith and fair dealing is implicit in every contract, it cannot be construed so broadly as effectively to nullify other express terms of a contract, or to create independent contractual rights." *Fesseha v. TD Waterhouse Inv. Servs.*, 761 N.Y.S.2d 22, 23 (2003).

Under the May TPA, Galvstar and Harvard agreed to be bound only on "a deal-by-deal basis," App'x 36, and that invoices "will be reduced to account for non-conforming material that may carry lesser value," *id.* at 31. In fact, Harvard agreed to remit payment on invoices only "once non-conforming values have been assigned." *Id.* The May TPA formed the "entire agreement and understanding" between the parties, *id.* at 35, it governed the parties' conduct retroactive to December 2012, *id.* at 30, and it was terminable at will upon advance written notice, *id.* at 30-31. Because Harvard's actions were consistent with its rights under the May TPA, Galvstar was obliged to produce more than speculative inferences to establish that those actions amounted to a violation of that agreement.

\* \* \*

We have considered Galvstar's remaining arguments, which we conclude are without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court